1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

8  JAMES E. PORTER,                     )   1:03-cv-05339-TAG HC
                                        )
9        Petitioner,                    )   ORDER DENYING PETITION
                                        )   FOR WRIT OF HABEAS CORPUS
10   v.                                 )   (Doc. 1)
                                        )
11   JOE MCGRATH, et al.,               )   ORDER DENYING ALL PENDING MOTIONS
                                        )   AND REQUESTS AS MOOT
12       Respondents.                   )
_____    )   ORDER DIRECTING CLERK OF COURT TO
13                                       )   ENTER JUDGMENT IN FAVOR OF
_____    )   RESPONDENT
14

15

16        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

18                                  **PROCEDURAL HISTORY**

19        Petitioner is in custody of the California Department of Corrections serving a determinate

20   sentence of eleven years plus a consecutive indeterminate sentence of seventy-five years to life,

21   pursuant to a judgment of the Superior Court of California, County of Fresno, following his

22   conviction by jury of forcible rape (Cal. Pen. Code § 261(a)(2)); unlawful penetration by a foreign

23   object (Cal. Pen. Code § 289(a)); and unlawful oral copulation (Cal. Pen. Code §§ 288a(c)).  (Clerk's

24   Transcript on Appeal ( "CT") 503).

25        Petitioner appealed his conviction to the California Court of Appeal for the Fifth Appellate

26   District ("5th DCA"), in case number F033735.  (Doc. 11, Exh. D.)  The 5th DCA affirmed the

27   conviction in an unpublished opinion filed on April 9, 2001, but reduced Petitioner's determinate

28   sentence from eleven to six years, and reduced his indeterminate sentence from seventy-five years to

1  life to fifty years to life. (Doc. 11, Exh. D, p. 36).  Both Petitioner and the Attorney General filed

2  timely petitions for review in the California Supreme Court. (Doc. 11, Exhs. E, F).  Respondent's

3  petition was granted on a "grant and hold" basis, while Petitioner's petition was summarily denied

4  by the California Supreme Court on November 26, 2002. (Doc. 11, Exh. G).  Subsequently, the

5  California Supreme Court remanded the case back to the 5th DCA with directions to vacate its

6  decision and reconsider the case in light of an intervening California Supreme Court decision.  (Doc.

7  11, Exh. H).  On January 10, 2003, the 5th DCA again affirmed the conviction, including the original

8  sentence. (Doc. 11, Exh. I).

9      The instant petition was filed on February 26, 2003. (Doc. 1).  Respondent's answer was

10  filed on August 18, 2003. (Doc. 11).  Petitioner's traverse was filed on September 8, 2003. (Doc.

11  14).

12                      **FACTUAL BACKGROUND**

13      The Court adopts the facts as summarized by the 5th DCA, in relevant part, as follows:

14  Dorothy [the victim] lived in room 20 of the Flamingo Inn on Motel Drive in
    Fresno.  Dorothy was 62 years old and was familiar with most of the residents at the
15  motel.  Kent McCain and Cindy Barnett, Dorothy's friends, lived in rooms 32 and
    30, respectively.  At 5 p.m. on September 2, 1998, appellant James Porter checked
16  into room 12 of the motel.  Neither Dorothy, McCain or Barnett had seen appellant
    at the motel before.
17
    That evening, Dorothy was socializing with Bobbie Sanders.  The women were
18  approached by "Chris," who gestured toward appellant and said that "'[m]y partner
    came to me, and he just got out, or whatever, you know, and he'd like to have a
19  female companionship for the evening."  Appellant asked the women if they were
    "for sale," and whether he could "buy" one of them.  Appellant repeatedly asked
20  them for a "date," which the women recognized as an offer to pay for sex.
    Appellant offered to pay $75 for sex but said that he could not get the money until
21  the following day.  They repeatedly rejected appellant's offer and said they were not
    interested.
22
    Bobbie Sanders testified that appellant seemed to ask every woman in the motel for
23  a date that night.  Appellant also approached Cindy Barnett and asked for a date,
    and Barnett refused.  Barnett observed appellant approaching women in the motel
24  and trying to solicit sex in exchange for money.

25  At approximately 2 a.m. on September 3, 1998, Dorothy contacted McCain and said
    that she lost the key to her room.  Dorothy frequently lost her key, and McCain went
26  to the manager's office and retrieved another key.  Dorothy returned to her room,
    but left the door open because it was hot.
27
    Just after Dorothy returned to her room, appellant rushed into her room through the
28  open door, grabbed Dorothy's neck, and said something about having a date the

hard way.  Dorothy screamed once before appellant cut off her air, and appellant started to take off her clothes.  Appellant told Dorothy he would let her breathe if she promised not to scream anymore.  Dorothy testified she cooperated and did not offer physical resistance because she was scared.

Appellant kissed Dorothy's breast and vaginal area.  He produced a jar of lubricant, and penetrated her vagina with his finger.  Appellant raped her, then said that a friend of his would visit her if she said anything about the incident.  Appellant said he would give $20 to Dorothy the next day, and asked if she wanted the money.  Dorothy testified she said yes to anything appellant said because she was afraid of him.  Appellant left her room after the sexual assault.

Dorothy got dressed and called McCain's room.  Cindy Barnett answered the telephone, and Dorothy said that she had lost her key again.  McCain and Barnett thought Dorothy seemed nervous and scared, but she did not want to talk.  McCain walked to Dorothy's room, showed her that the key was on a table, then returned to his room.  Dorothy testified that she wanted to tell McCain about the attack, but she was scared of appellant.

A few minutes later, Dorothy walked to McCain's room and knocked on the door.  McCain again noticed Dorothy was nervous.  Just as Dorothy started to speak with McCain, Fresno Police Officer Mooney pulled into the motel's parking lot.  He had been on patrol and noticed an elderly women [sic] in her nightclothes walking through the complex, and he was concerned for the woman's safety.  Officer Mooney asked Dorothy if she was okay, and directed her to return to her room.  McCain acknowledged the officer, and said that he would make sure she safely returned to her room.  Dorothy returned to her room again.

Shortly afterwards, Dorothy again went to McCain's room, and told McCain and Barnett there was a man in her closet.  Dorothy told them she had been raped, and she did not want to return to her room because the man threatened to kill her.  Dorothy was frantic and nervous, and there were red marks on both sides of her neck.  McCain looked outside and saw appellant standing outside of his room, and accused appellant of raping Dorothy.  McCain and Barnett called the police.

Officer Gerald Sepada responded to the motel at 4 a.m. and interviewed Dorothy.  Officer Sepada detected the odor of alcohol on Dorothy's breath and her speech was slow.  She was emotional and crying, and seemed reluctant to answer his questions.  Dorothy admitted she had consumed a half pint of whiskey that evening.

Dorothy was transported to the hospital by the paramedics.  The ambulance paramedic noticed red marks on Dorothy's neck, and she complained of neck and back pain.  At the hospital, Dorothy told a nurse the assailant penetrated her vagina with his penis and his finger, orally copulated her, and used some type of lotion.  Dorothy also stated the assailant had choked her neck and threatened to kill her.  The nurse conducted a pelvic examination and observed a laceration and abrasions in the vaginal area.  The nurse testified the injuries appeared to be fresh and inflicted within hours of the examination.

Later that morning, Dorothy identified appellant at an in-field show up as the man who attacked her.  Appellant was transported to the hospital for a suspect/rape examination.  It was determined that appellant's DNA matched the sperm sample on the vaginal swabs taken from Dorothy.

1  (Doc. 11, Exh. I, pp. 3-5 ).[1]

2                                          **DISCUSSION**

3  **I.  Jurisdiction**

4  _____Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

5  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

6  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

7  375 fn. 7, 120 S.Ct. 1495 (2000).  Petitioner asserts that he suffered violations of his rights as

8  guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno

9  County Superior Court, which is located within the jurisdiction of this court.   28 U.S.C. § 2254(a);

10  2241(d).  Accordingly, the Court has jurisdiction over this action.

11          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

12  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

13  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586

14  (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d

15  751, 769 (5th Cir. 1996)), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other

16  grounds by Lindh, 521 U.S. 320, 117 S.Ct. 2059 (holding the AEDPA only applicable to cases filed

17  after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is

18  therefore governed by the AEDPA.

19  **II.  Legal Standard of Review**

20          Under the AEDPA, a petition for writ of habeas corpus will not be granted unless the

21  adjudication of a state prisoner's claim "resulted in a decision that was contrary to, or involved an

22  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

23  the United States" or  "resulted in a decision that was based on an unreasonable determination of the

24  facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d);

25

26          [1] The foregoing evidence was presented by prosecution witnesses.  Petitioner did not present any witnesses at trial
in his defense. (RT 1246.)  Rather, in closing argument, Petitioner's attorney argued that the case was more one for breach
27  of contract than for a crime.  (RT 1287.)  Counsel argued that the State had failed to prove beyond a reasonable doubt a lack
of consent, pointing out that Petitioner had offered to pay Dorothy twenty dollars the next day, that she did not report the
28  incident to a police officer who interviewed her immediately after the incident, and that she had left her motel room door open
at 3 a.m.  (RT 1281; 1288.)

1  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003); Williams v. Taylor, 529 U.S. at 413, 120

2  S.Ct. 1495; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  The Supreme Court explains that

3          "[A] state court decision is contrary to our clearly established [Supreme Court]
        precedent  if the state court applies a rule that contradicts the governing law set forth

4          in [Supreme Court] cases, or "if the state court confronts a set of facts that are
        materially indistinguishable from a [Supreme Court decision] and nevertheless arrives

5          at a result different from [Supreme Court] precedent.
        . . .

6
        [U]nder the 'unreasonable application' clause. a federal habeas court may grant the writ

7          if the state court identifies the correct governing legal principle from [Supreme Court]
        decisions but unreasonably applies that principle to the facts of the prisoner's case.

8          . . .

9          The 'unreasonable application' clause requires the state court decision to be more than
        incorrect or erroneous. The state court's application of clearly established law must be

10         objectively unreasonable."

11 Lockyer v. Andrade, 538 U.S. at 73, 75 (citations omitted).

12         **Habeas Review of State Court Questions of Law**

13         Challenges to purely legal questions resolved by the state court are reviewed under 28 U.S.C.

14 § 2254(d)(1). "The question on review is (a) whether the state court's decision contradicts a holding

15 of the United States Supreme Court; or (b) whether the state court, after identifying the correct

16 governing Supreme Court holding, then unreasonably applied that principle to the facts of the

17 prisoner's case. " Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004).

18         The AEDPA denies habeas relief on any claim adjudicated on the merits in state court unless

19 the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable

20 application of, clearly established Federal law, as determined by the United States Supreme Court.

21 § 2254(d)(1)'s reference to "clearly established Federal law" means the holdings (not dicta) of the

22 Supreme Court's decisions, at the time of the state court's decision. Lockyer, 538 U.S. at 412.  "A

23 state court's decision is 'contrary to' clearly established Supreme Court precedent if the state court

24 applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court

25 confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme

26 Court and, nevertheless, arrives at a result different from its precedent." Lambert, 393 F.3d at 974

27 (*citations omitted*).  "The 'unreasonable application' standard captures those cases in which 'the state

28

1   court identifies the correct governing legal principle from [the Supreme] Court's decisions but

2   unreasonably applies that principle to the facts of the prisoner's case.'" Id., quoting Williams v.

3   Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495 (2000).  The Supreme Court instructs that in applying the

4   "unreasonable application" standard, a federal habeas court should ask whether the state court's

5   application of clearly established federal law was objectively unreasonable.  Williams, 529 U.S. at

6   413. Thus, a habeas writ cannot issue if the federal habeas court in its own judgment concludes that

7   the state court decision applied clearly established federal law incorrectly;  the application  must also

8   have been objectively unreasonable. Id.

9         To determine whether a state court decision is contrary to or an unreasonable application of

10   federal law, the federal habeas court looks to the "last reasoned decision of [a] state court as the basis

11   of the state court's judgment." Powell v. Galaza, 328 F. 3d 558, 563 (9th Cir. 2003) (quoting

12   Franklin v. Johnson, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)).  However, when the state court

13   provides no reasoning for its decision, the federal court independently reviews the record to

14   determine whether under the AEDPA,  the state court properly denied habeas relief, focusing on

15   whether the state court's resolution of petitioner's claim was an unreasonable application of clearly

16   established federal law. See, Greene v. Lambert, 288 F. 3d 1081, 1088-89 (9th Cir. 2002); Delgado

17   v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2002).  "Only by that examination may [the federal court]

18   determine whether the state court's decision was objectively unreasonable." Id. at 982.

19         **Review of State Court Questions of Fact**

20         Federal habeas challenges to purely factual questions determined by the state courts are

21   reviewed under 28 U.S.C. §§ 2254(d)(2); "[t]he question on review is whether an appellate panel,

22   applying the normal standards of appellate review, could reasonably conclude that the finding is

23   supported by the record. [F]act-based challenges founded on evidence raised for the first time in

24   federal court are reviewed under § 2254(e)(1); the question on review is whether the new evidence

25   amounts to clear and convincing proof sufficient to overcome the presumption of correctness given

26   the state court's factual findings." Lambert, 393 F.3d at 978; see, e.g., Miller-El v. Cockrell, 537

27   U.S. 322, 123 S.Ct. 1029 (2003); Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003).  Thus, under

28   the AEDPA, state court factual determinations are presumed correct in the absence of  clear and

1  convincing evidence to the contrary. In addition, state court decisions which are adjudicated on the

2  merits and based on factual determinations will not be overturned on habeas review under the

3  AEDPA unless the decisions were objectively unreasonable in light of the evidence presented in the

4  state court proceedings. Lockyer, 538 U.S. at 75.

5      The Ninth Circuit Court of Appeals recently interpreted §§ 2254(d)(2) and 2254(e)(1)[2], and

6  held both provisions apply to challenges supported by separate categories of evidence. Taylor v.

7  Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); Lambert, 393 F.3d at 971-973.  In Taylor, the Ninth

8  Circuit held that the "unreasonable determination" clause of § 2254(d)(2) applies to intrinsic review

9  of a state court's process, i.e., circumstances in which a petitioner challenges the state court's

10 findings based entirely on the state court record. Id. at 999-1000.  In Taylor, the Ninth Circuit also

11 held that § 2254(e)(1) applies to challenges based on extrinsic evidence, i.e., evidence presented for

12 the first time in federal court. Id.  As explained in Taylor: "[I]t is not enough that we would reverse

13 in similar circumstances if this were an appeal from a district court decision; rather, we must be

14 convinced that an appellate panel, applying the normal standards of appellate review, could not

15 reasonably conclude that the finding is supported by the record." Id. (citations omitted). Likewise,

16 mere doubt as to the adequacy of the state court's findings of fact is insufficient; "we must be

17 satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is

18 pointed out would be unreasonable in holding that the state court's fact-finding process was

19 _____

20    [2] §§ 2254(d)(2) and 2254(e)(1) address whether, and to what extent, a federal district court is
      bound by state court findings on any of the dispositive factual questions presented in a federal habeas
21    petition.  These statutes provide as follows:

22        (D) An application for a writ of habeas corpus on behalf of a person in
          custody pursuant to the judgment of a State court shall not be granted
23        with respect to any claim that was adjudicated on the merits in State court
          proceedings unless the adjudication of the claim --
          . . .
24
25        (2) resulted in a decision that was based on an unreasonable determination
          of the facts in light of the evidence presented in the State court proceeding.

26        (e)(1) In a proceeding instituted by an application for a writ of habeas corpus
          by a person in custody pursuant to the judgement of a State court, a
27        determination of a factual issue made by a State court shall be presumed to
          be correct.  The applicant shall have the burden of rebutting the presumption
28        by clear and convincing evidence.

1    adequate. Id.; Lambert, 393 F.3d at 972.

2        In the event a habeas petition presents no intrinsic challenge to a state court's factual

3    determinations, or if it does, the factual determinations survive an intrinsic review, the factual

4    determinations are then "dressed in a presumption of correctness, which[ ] helps steel them against

5    any challenge based on extrinsic evidence." Id., citing Taylor v. Maddox, 366 F.3d at 999-1000.

6    State court factual findings "may be overturned based on new evidence presented for the first time

7    in federal court only if such new evidence amounts to clear and convincing proof that the state-court

8    finding is in error." Id.

9        **Review of State Court Mixed Questions of Law and Fact**

10        A mixed question of law and fact is one that requires the application of legal principles to

11   historical and other facts. § 2254(e)(1)'s presumption of correctness is restricted to pure questions of

12   historical fact. Lambert, 393 F.3d at 976. However, "[s]tate decisions applying law to facts are

13   governed by § 2254(d)(1); however, factual findings underlying the state court's conclusions on the

14   mixed issue are accorded a presumption of correctness." Id., citing Jeffries v. Wood. 114 F.3d 1484,

15   1498 (9th Cir. 1997) (AEDPA "further restricts the scope of federal review of mixed questions of law

16   and fact. De novo review is no longer appropriate; deference to the state court factual findings is."),

17   further citing Rupe v. Wood,93 F.3d 1434, 1444 (9th Cir. 1997) (voluntariness of confession is a

18   legal question not entitled to presumption of correctness but the state court's finding that no threats

19   or promises were made was "essentially a factual conclusion, which is entitled to a presumption of

20   correctness").

21        A federal court reviewing a state court decision based on a mixed question of law and fact

22   must first separate the legal conclusions from the underlying factual determinations. "Fact-finding

23   underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and (e)(1), while

24   the state court's conclusion as to the ultimate legal issue–or the application of federal law to the

25   factual findings–is reviewed per § 2254 (d)(1) in order to ascertain whether the decision is 'contrary

26   to, or involved an unreasonable application of, clearly established' Supreme Court precedent."

27   Lambert v. Blodgett, 393 F.3d at 977-978.

28   ///

1

### III.  Review of Petitioner's Claims

2

      **Ground 1.**     **The trial court violated Petitioner's due process or equal protection rights by admitting into evidence a prior rape conviction pursuant to California Evidence Code §§ 1101(b) and 1108.**

3

4

      Petitioner contends that the trial court violated his constitutional rights by admitting evidence

5

of a prior rape pursuant to California Evidence Code §§ 1101(b) and 1108.   (Doc. 1, p. 5).

6

Petitioner's contentions are without merit.

7

      A.  Procedural History.

8

      Prior to trial, the prosecution filed an in limine motion requesting permission to introduce

9

evidence of three prior sexual assaults by Petitioner, against victims Aida Wooten,[3] "Dorena," and

10

"Julie," pursuant to Evidence Code §§ 1101 and 1108.  (RT 319-320; CT 297.)  The prosecution

11

sought admission of that evidence on the grounds that it would establish identity.  (RT 326.)

12

Petitioner's attorney objected that such propensity evidence violated Petitioner's "constitutional right

13

to a fair trial."  (RT 320.)

14

      Following a hearing on the matter, the trial court excluded evidence of the prior assaults on

15

Dorena and Julie because the circumstances of their rapes, i.e., two minors raped on the street instead

16

of in their residences, were so dissimilar from the rapes of Aida and Dorothy.  (RT 346; 348.)  The

17

trial court ruled the Aida Wooten rape to be admissible both to show intent and to show a common

18

plan or scheme.  (RT 346-347.)   The court then engaged in a balancing of the probative value of the

19

incident and its potential prejudicial effect under Evidence Code § 352, concluding that the Aida

20

Wooten rape was "clearly probative" and that its "probative value does out weigh the prejudicial

21

effect."   (RT 347.)[4]

22

      Thereafter, during trial, Lynette Stannard, the daughter of Aida Wooten, testified that her

23

mother was a rape victim in 1989 when she was in her early seventies.  (RT 1210.)  Stannard

24

identified Petitioner as the person her mother picked out of a physical lineup.  (RT 1211.)  The trial

25

court then permitted the prior preliminary hearing testimony of Wooten to be read to the jury,

26

---

27

      [3]Throughout the state court record lodged with Respondent's answer, Ms. Wooten's first name is spelled "Aida" and "Ada" almost interchangeably.  For consistency, the Court will refer to her as "Aida."

28

      [4]The trial court did not undertake a separate analysis for admissibility under § 1108. (RT 354.)

1
2
3
4
5
6

Wooten having died in 1998. (RT 1215; CT 298.) Wooten related that she had returned to her residence in mid-afternoon when a man she identified as Petitioner approached her and asked the time. (RT 1216-1218.) Petitioner then asked Wooten to make a phone call for him, and Wooten brought the telephone to the door. (RT 1219.) After trying to make a call, Petitioner hung up and told Wooten there was no answer. (Id.) Petitioner then entered Wooten's residence without her permission. (Id.).

7
8
9
10
11

Wooten then recalled being on the floor struggling and screaming and being hit in the face by Petitioner. (RT 1220.) Petitioner told her to get undressed and get on the bed; he also told Wooten he would hurt her if she continued to scream. (RT 1221.) After raping Wooten, Petitioner made her take a shower, observing her while she did so, and then told her not to tell police or he would kill her. (RT 1224.)[5]

12

   B. <u>Admission of the Prior Rape Under § 1101(b) Was Not Improper</u>.[6]

13
14
15

   Petitioner first contends that the trial court erroneously admitted, pursuant to California Evidence Code § 1101(b), a 1989 rape conviction in violation of his constitutional rights to due process and equal protection.[7]

16
17
18
19
20

   A federal habeas corpus court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or other federal rights have been violated. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990). Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. <u>Estelle</u>, 502 U.S. at 67; <u>Middleton v. Cupp</u>, 768

21
22
23
24
25
26
27
28

---

   [5] Petitioner subsequently entered a plea of guilty to violations of California Penal Code §§ 261(a)(2)(rape) and 211(robbery) on May 19, 1989. (CT 298.)

   [6] Respondent's answer does not address § 1101(b) at all. No clear reason for this appears in the record, since the state court briefs submitted by Respondent clearly indicate that this issue was exhausted by Petitioner in state court and raised in his federal habeas petition. Although the Court could request supplemental briefing on this issue, the standards for a due process analysis of prior "bad acts" are well-established. Thus, the Court will address the issue without requiring further briefing from the parties.

   [7] Although Petitioner argues both equal protection and due process with respect to admission of the prior conviction under both §§ 1101 and 1108, the briefs submitted in Petitioner's state court appeal only addressed a potential due process violation with respect to § 1101(b). (Doc. 11, Exh. A, p. 22; Exh. E, p. 9). Thus, despite the somewhat confusing headings in the state court briefs, the Court concludes that the equal protection component of Petitioner's argument is directed only at section 1108.

F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).  Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 72; Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation.  Id. at 920. Intent is a permissible inference that the jury may draw from the evidence of prior bad acts.  See, Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

Under California law, uncharged misconduct is admissible if the conduct is sufficiently similar to the charged offense to support the inference that the defendant probably harbored the same intent in each instance.  People v. Ewoldt, 867 P.2d 757, 7 Cal.4th 380, 402 (1994).  Petitioner's rape of Wooten in her own residence by use of physical force and verbal threats was similar in nature to the prosecution's depiction of Petitioner's rape of Dorothy, and thus was clearly relevant to Petitioner's intent on the night of the charged offense, as well as to his common plan or scheme to obtain sex from elderly women through the use of force and threats.

The Ninth Circuit has upheld the admission of prior crimes or bad acts where (1) there is sufficient proof that defendant committed the prior act; (2) the prior act is not too remote in time, (3) the prior act is similar (if admitted to show intent); (4) the prior act is used to prove a material element; and (5) the probative value is not substantially outweighed by prejudice.  See, Walters v. Maas, 45 F.3d at 1357-58 (upholding state admission of prior on federal habeas review); see, also, United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992), *cert. denied*, 114 S.Ct. 113 (1993).  All of the above are present in this case.

These factors favor admissibility of the evidence.  First, the evidence of Petitioner's involvement in the rape of Aida Wooten was uncontroverted.  Indeed, Petitioner pleaded guilty to the charge in 1989.  Second, although Petitioner's trial occurred in 1999, the Court does not find that

admitting propensity evidence from ten years earlier is too remote, especially considering Petitioner spent at least part of that time incarcerated for the Wooten rape. Third, as the state court found, the two rapes are quite similar in their salient characteristics: assaults of elderly women in their homes by use of physical force and verbal intimidation. Fourth, the Wooten rape was admitted to establish intent, the primary material issue at trial in light of Petitioner's defense of consent. Finally, considering all the circumstances, the Court agrees with the state court that the probative value of the prior incident outweighed its prejudicial effect. This is especially true because the jury was expressly instructed regarding to the use of the prior incident for propensity only, the attorneys themselves only infrequently referred to the Wooten rape during closing argument, and the evidence itself was introduced through the reading of a transcript, a much less inflammatory method of presenting the evidence than having the victim testify as a live witness in front of jurors. These factors together adequately support the state court's balancing process under § 352.

Thus, the Court finds the state court's admission of the Wooten rape did not render Petitioner's trial arbitrary or fundamentally unfair in violation of due process. See, Walters v. Maas, 45 F.3d at 1357-58. As such, the state court's decision is neither contrary to or an unreasonable application of federal law and Petitioner is not entitled to relief on this claim.

    C. Admission of the Prior Rape Under § 1108 Was Not Improper.

        1. The Introduction Of The Prior Rape Did Not Violate Equal Protection.

Petitioner also argues that he was denied equal protection by the trial court's admission of the Wooten rape incident under California Evidence Code § 1108. Petitioner also maintains that, even if § 1108 does not violate equal protection, admission of the evidence was "prejudicial," i.e., presumably that it violates his right to due process and a fair trial. Neither contention has merit.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). The Supreme Court has articulated three distinct standards applicable to equal protection analysis: strict scrutiny, heightened scrutiny, and rational basis review. City of Cleburne, 473 U.S. at 440-441.

The standard to be invoked depends on the nature of the class involved or the interest affected. The most lenient standard, rational basis review, requires only that a rational basis exist for the classifications drawn and that the practice in question be adopted in pursuit of legitimate government purposes. San Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973). At the other extreme, the strict scrutiny standard requires a close connection between the legislation or practice under examination and a compelling state interest. This is the appropriate test when fundamental rights are at stake or a suspect classification is involved. See, e.g., Roe v. Wade, 410 U.S. 113 (1973)(right to choose an abortion); Shapiro v. Thompson, 394 U.S. 618 (1969)(right to travel); Loving v. Virginia, 388 U.S. 1 (1967)(right to marry). Finally, in between these two positions lies an intermediate standard of review, heightened scrutiny, in which there must be a substantial relationship to an important, but not necessarily compelling, state interest. This standard has been applied only to gender-based classifications. See, e.g., Califano v. Goldfarb, 4230 U.S. 199 (1977); Craig v. Boren, 429 U.S. 190 (1976).

As mentioned, the Supreme Court has held that statutory schemes that establish separate classifications which do not implicate constitutional rights are subject to a rational basis analysis. Estelle v. Dorrough, 420 U.S. 534, 537-538 (1975). In People v. Fitch, 55 Cal.App.4th 172, 184-185 (1997), the California Court of Appeal addressed whether Evidence Code § 1108 establishes a classification scheme that is subject to a rational basis analysis, concluding in the end that it does:

> Evidence Code § 1008 withstands this relaxed scrutiny. The Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses. This reasoning provides a rational basis for the law. In order to adopt a constitutionally sound statute, the Legislature need not extend it to all cases to which it might apply. The Legislature is free to address a problem one step at a time or even to apply the remedy to one area and neglect others.

Respondent correctly notes that the 5th DCA in Petitioner's direct appeal relied upon Fitch in rejecting his equal protection argument. (Doc. 11, Exh. I, p. 11). The Court agrees here that the rational basis test is the correct test to apply in conducting an equal protection analysis of § 1108. See, Estelle v. Durrough, 420 U.S. at 537-538 (subjecting two classifications of defendants to rational-basis scrutiny when no fundamental right is involved).

Under rational-basis review, the law is constitutional if it bears a rational relationship to a legitimate governmental interest.  Prosecuting crime effectively is a legitimate government interest.  United States v. Lemay, 260 F.3d 1018, 1031 (2001).  The California legislature has chosen to treat admission of evidence against sex offenders differently because, in part, of the "serious and secretive nature of sex crimes and the often resulting credibility contest at trial."  Falsetta, 21 Cal.4th 903, 911 (1999).  This is a rational basis for the distinction.  Application of § 1108 did not violate Petitioner's equal protection rights.  In the Court's view, the state court applied the correct federal standard and reached the correct result.  Accordingly, the state court's rejection of the equal protection argument is not contrary to or an unreasonable application of clearly established federal law.

2.  Introduction Of The Prior Rape Did Not Violate Due Process.

The admissibility of evidence is a matter of state law, and improper admission of evidence does not usually violate the Constitution and is not normally cognizable in federal habeas corpus.  See, Estelle v. McGuire, 502 U.S. at 68.  Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process.  See, Jeffries v. Blodgett, 5 F.3d at 1192.  "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process.  Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"  Jammal, 926 F.2d at 920(citations omitted).

As mentioned above, the trial court admitted testimony from Aida Wooten's daughter, who identified Petitioner as the individual who had been convicted of raping her mother, now deceased, in 1989.  Thereafter, a transcript of the preliminary hearing at which Aida Wooten had identified Petitioner as her assailant was read to the jury.  This evidence was presented pursuant to California Evidence Code § 1108.[8]  The 5th DCA rejected Petitioner's claims regarding the unconstitutionality of § 1108 in its unpublished opinion.  (Doc. 11, Exh. I, p. 11-12).

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The Ninth Circuit Court of Appeals has

---

[8]  Section 1108 provides in pertinent part as follows: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1001, if the evidence is not inadmissible pursuant to Section 352."

found that the federal analog to § 1108 relating to the admission of propensity evidence in child

molestation cases, Rule 414, does not violate due process, provided that the protections remain in

place which prevent the prejudicial effect from outweighing the probative value. LeMay, 260 F.3d

1018.  In California those protections are provided by Rule 352 of the California Rules of Evidence,

which provides that otherwise admissible evidence may not be admitted if its prejudicial effect

outweighs its probative value.[9]  The trial court here performed the requisite § 352 balancing,

implicitly concluding that evidence of the Wooten rape was not unduly time consuming, that it was

not too remote in time, and that it was probative as to whether Petitioner had the propensity to

commit such acts in the future.  (RT 347.)  In reviewing the trial court's balancing process under

§ 352, the 5th DCA concluded as follows:

> Appellant's prior sexual assault on Ada W. Was highly probative both as propensity evidence and to show a common scheme or plan.  The prior assault and the instant offenses both involved appellant's repeated attempts to approach elderly women under innocuous circumstances, followed by quick and violent sexual assault. Appellant used both physical violence and intimidation to overpower his victims, and refused their pleas for him to stop.  *Such propensity evidence is exactly the type of testimony contemplated by section 1108 and was not unduly prejudicial under section 352. The record demonstrates the trial court carefully balanced the probative value of the proposed propensity evidence against the potentially prejudicial impact of such evidence.*

(Doc. 11, Exh. I, p. 12)(Emphasis supplied).

Moreover, the Supreme Court has expressly left open the question of whether the admission

of propensity evidence violates due process.  See, Estelle v. McGuire, 502 U.S. at 75, n. 5; see,

Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir.2002) (habeas relief not warranted unless due

process violation clearly established by the Supreme Court); hence, the state courts' rejection of this

claim could not have been contrary to, or an unreasonable application of, clearly established United

States Supreme Court authority.  28 U.S.C. § 2254(d)(1).

///

///

///

---

[9]California Evidence Code § 1108 was modeled after the Federal Rules, and contains an express requirement that courts balance the probative value of the evidence against its prejudicial effect.  People v. Falsetta, 21 Cal. 4th 903, 912 (1999).

**Ground 2.**     **The trial court violated Petitioner's constitutional rights by excluding evidence of the victim's prior sexual conduct**.

Petitioner next contends that the trial court violated his constitutional rights by excluding evidence of the victim's prior sexual conduct under California Evidence Code § 782.  (Doc. 1, p. 5.)  Petitioner's claim is without merit.

A.  Procedural History.

Prior to trial, Petitioner's counsel filed a motion to introduce the testimony of Romel Washington regarding the victim's prior sexual history.  (CT 315.)  In an offer of proof attached to the motion, Petitioner sought to have Washington testify that he lived in the same motel as Dorothy, the scene of the rape, and that on three occasions–one as recently as eleven months prior to the rape-- he had engaged in sex with Dorothy for money.  (CT 327.)  Counsel indicated that such testimony would be offered "to attack the credibility of the complaining witness."  (CT 328.)

Earlier, at the preliminary hearing, Dorothy had testified that Petitioner had solicited a "date" from her, that she understood the word "date" to refer to sex for money, and that she had refused because she did not "date" anymore and now had a boyfriend.  (CT 44.)  The prosecutor then asked Dorothy if she had ever had sex for money, to which she replied that she had, but "it's been quite a while."  (CT 45.)  The prosecutor then asked her how long, and Dorothy replied, "About seven years ago."  (Id.).

The defense asked to present the testimony of Romel Washington to rebut Dorothy's testimony about not having engaged in paid sex for seven years.  (CT 136-137.)  Specifically, the defense sought to rebut Dorothy's "testimony that she's not a prostitute."  (CT 137.)  The court permitted the rebuttal evidence, and Washington testified that he lived in the same motel as Dorothy and that he had engaged in sex for money with her three times approximately eleven months earlier.  (CT 151.)  He also indicated that on one occasion he had arranged to pay Dorothy the next day.  (CT 151.)  The defense had argued that both Dorothy's activities as a prostitute and her willingness to be paid later supported the defense that Dorothy had not been raped but instead had agreed to have sex for money.  (CT 101.)

///

In the pre-trial hearing on the defense motion in limine to present Washington's testimony, the trial court relied upon <u>People v. Rioz</u>, 161 Cal.App.3d 905 (1984), which discussed the interaction between California Evidence Code §§ 1103 and 752, both of which were bases for the defense motion.  (CT 315.)   The trial court interpreted those statutes and <u>Rioz</u> to require that a defendant seeking to introduce evidence of the victim's prior sexual history must first affirmatively offer to prove under oath the relevance of the complaining witness's sexual conduct to attack her credibility in some way other than by merely disparaging her character.  (RT 350.)   The court emphasized language from <u>Rioz</u> that a defendant cannot introduce evidence of prior sexual incidents based solely on the victim's testimony and her denial of consent.  (RT 352.)  Based on §§ 1103 and 782, and the appellate courts' interpretation of those statutes, and also after conducting a balancing under § 352, the court denied the defense motion as to the prosecution's case-in-chief, but held open the possibility that, if the prosecution should "open the door," as it had during the preliminary hearing, to Dorothy's prior sexual history, then the court would revisit the issue at that time. (RT 351; 352-353.)

B.  <u>California's "Rape Shield" Law</u>.

In California, Evidence Code §§ 1103 and 782 govern the admissibility of a rape victim's prior sexual history.  <u>People v. Chandler</u>, 56 Cal.App.4th 703, 707 (1997).[10]   The California Legislature added § 782 and amended § 1103 to prevent a rape victim from being questioned extensively about any prior sexual history without a showing such questioning was relevant, reasoning that fear of personal questions would deter victims from filing complaints, thus resulting

---

[10]Section 1103(a)(1) provides that evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim...is not made inadmissible by Section 1101 if the evidence is...[o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

The foregoing subsection is limited by § 1103(c)(1), which provides in part that in rape cases, "opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of that evidence, is not admissible by the defendant in order to prove consent by the complaining witness."

Section 782(a)(2) provides in pertinent part that, where evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness, "[a] written motion shall be accompanied by an affidavit in which the offer of proof shall be stated."  The court must then make a determination regarding the sufficiency of the offer of proof.  § 782(a)(2).   If the court finds the offer sufficient, it must conduct a hearing out of the presence of the jury, to allow questioning of the complaining witness as to the allegations in the offer of proof.  § 782(a)(3).  The court must then decide whether the evidence is (1) relevant and (2) admissible under section 352.  § 782(a)(4).

in a lower rate of reported rapes.  People v. Casas, 181 Cal.App.3d 889, 895 (1986).

Section 1103, subdivision (c) provides that a rape defendant cannot introduce opinion evidence, reputation evidence, and evidence of specific instances of the alleged victim's previous sexual conduct with persons other than the defendant to prove the victim consented to the sexual acts alleged.  In adopting that section, the California Legislature recognized that evidence of the alleged victim's consensual sexual activities with others has little relevance to whether consent was given in a particular instance.  Chandler, 56 Cal.App.4th at 707.  Section 1103(c)(4), however, does allow the admission of evidence of prior sexual history relevant to the credibility of the victim when the issue is first raised by the prosecution.  Id.[11]  But because a victim's credibility is virtually always an issue in sexual assault cases, Evidence Code § 782 provides a procedure requiring an in camera review of the proffered evidence to diminish the potential abuse of § 1103(c)(4).  Id. at 708.  Thus, the defense may offer evidence to attack the victim's credibility through prior sexual conduct if, after a hearing, the trial court concludes that the proffered evidence's prejudicial effect is substantially outweighed by its probative value under Evidence Code § 352.  Id.

In Rioz, the 5th DCA upheld the exclusion of evidence that the sexual assault victim had previously been convicted of prostitution and evidence of certain aspects of her conduct as a prostitute.  Noting the "inherent tension" between Evidence Code § 782 and § 1103, the 5th DCA emphasized the need to follow § 782's procedural requirement that the defense make a sworn offer of proof concerning the relevance of the sexual conduct to attack credibility:

> There is necessarily a certain amount of overlap between the issues of the victim's consent in a rape or other sex offense case and the victim's credibility.  Presumably, any complaining witness in a rape case will deny consent to the sexual acts complained of; to avoid the harassment which had traditionally plagued complaining witnesses in cases of this type, the Legislature excluded evidence of prior sexual activity by the complaining witness with persons other than the defendant in order to prove consent.  Thus, it seems clear under Evidence Code section 1003, subdivision (b)(1), that a defendant in a rape case cannot, based solely upon the victim's testimony and her presumed denial of consent, introduce evidence that she engaged in sexual activity with 1 other man, 10 other men, or 100 other men, nor that she engaged in such activity freely or for monetary compensation.  This rule properly prevents the victim of sexual assault from being herself placed on trial.

---

[11] Section 1103(c)(4) provides as follows: "If the prosecutor introduces evidence, including testimony of a witness, or the complaining witness gives testimony, and that evidence or testimony relates to the complaining witness' sexual conduct, the defendant may cross-examine the witness who gives the testimony and offer relevant evidence limited specifically to the rebuttal of the evidence introduced by the prosecutor or given by the complaining witness."

Rioz, 161 Cal.App.3d at 916.

The 5th DCA went on to observe that prior prostitution convictions may also be excluded in the reasonable exercise of the trial court's discretion:

> An example serves to demonstrate the wisdom of this statutory framework: A defendant charged with forcible rape makes the requisite written motion, supported by a sworn affidavit, offering to prove that the complaining witness, a convicted prostitute, agreed to have sex with the defendant for money and charged him with rape to get even when he refused to pay her. However, not only has the complaining witness denied that the sexual activity with the defendant was consensual, but other evidence establishes without contradiction that the complaining witness was beaten in connection with the event. Given the potentially prejudicial impact of a prostitution conviction on the victim's testimony that she did not consent, the trial court, in the exercise of its discretion, may determine that the injuries suffered by the victim are wholly inconsistent with the defendant's offer of proof and either reject the sufficiency of the offer of proof in the first instance or exclude evidence of the prostitution conviction, after a hearing, pursuant to Evidence Code section 352.

Id. at 916-917.

Here, the state trial court relied upon Rioz to exclude Washington's testimony after balancing the proffered evidence's prejudicial effect against its probative value under § 352. (RT 352.) Washington's proffered testimony that he had sex with Dorothy for money eleven months before Petitioner met her falls squarely within the ambit of evidence excluded by § 1103. The state court required an offer of proof, conducted an in camera hearing, engaged in a § 352 balancing, and concluded that the prior incidents were inadmissible. It appears to this Court that the state court correctly interpreted § 1103, and followed the appropriate procedures set forth in § 782 in reaching its decision to exclude evidence of Dorothy's prior sexual history.[12] The question, however, before this Court is whether the state court, in so ruling, violated Petitioner's constitutional rights.

C. Exclusion Of Evidence Under California's Rape Shield Law Did Not Violate Petitioner's Constitutional Rights.

Petitioner contends that the state courts' exclusion of Washington's testimony violated his Sixth Amendment rights to due process, confrontation, and cross-examination. (Doc. 1, attach., p. 3.) Petitioner is mistaken.

---

[12] Insofar as Petitioner contends that the trial court erred under state law, such a claim is not cognizable in federal habeas corpus. Habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law. Estelle, 502 U.S. at 67-68; Middleton, 768 F.2d at 1084-8.

1

2

      1.  <u>General Constitutional Principles</u>.

      The rights encompassed by the Sixth Amendment include the rights to cross examination,

<u>Davis v. Alaska</u>, 415 U.S. 308, 315-316 (1974), and to present relevant evidence, <u>Michigan v. Lucas</u>,

3

4

500 U.S. 145 (1991).   A defendant has no right, however, to present irrelevant evidence.  <u>United</u>

<u>States v. Torres</u>, 937 F.2d 1469, 1473 (9th Cir. 1992).  It is within the trial court's discretion to

5

6

determine which issues are relevant.  <u>See</u> <u>id.</u>

7

      Even relevant evidence can be excluded in certain circumstances.  <u>Wood v. Alaska</u>, 957 F.2d

8

1544, 1549 (9th Cir. 1992).  The right to present relevant testimony "may, in appropriate cases, bow

9

to accommodate other legitimate interests in the criminal trial process."  <u>Chambers v. Mississippi</u>,

10

410 U.S. 284, 295 (1973).  The Supreme Court has recognized that a state has a legitimate interest in

protecting rape victims against unwarranted invasions of privacy and harassment regarding their

11

sexual conduct.  <u>Lucas</u>, 500 U.S. at 152-153.  Additionally, "trial judges retain wide latitude insofar

12

as the Confrontation Clause is concerned to impose reasonable limits on...cross-examination based

13

on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'

14

safety, or interrogation that is repetitive or only marginally relevant."  <u>Delaware v. Van Arsdall</u>, 475

15

U.S. 673, 679 (1986).

16

      In <u>Lucas</u>, the Supreme Court reversed the Michigan Court of Appeals' per se rule that the

17

notice requirement in Michigan's rape shield law violated the Sixth Amendment in all cases where it

18

was used to preclude evidence of past sexual conduct between a rape victim and a criminal

19

defendant.  <u>Lucas</u>, 500 U.S. at 146.  The Court recognized that the Sixth Amendment right to present

20

relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the

21

criminal trial process."  <u>Id.</u> at 149.  However, the restrictions on the defendant's right to present

22

testimony "may not be arbitrary or disproportionate to the purposes they are designed to serve."  <u>Id.</u>

23

at 151.  The failure to comply with a rape shield law's notice requirements may, in some cases,

24

justify the sanction of preclusion of evidence.  <u>Id.</u> at 153.  The Supreme Court has made clear that

25

whether preclusion is a constitutional sanction must be evaluated on a case-by-case basis.  <u>LaJoie v.</u>

26

<u>Thompson</u>, 217 F.3d 663, 669 (9th Cir. 2000), citing <u>Lucas</u>, 500 U.S. at 153.

27

///

28

1
2
3
4
5
6
7
8

Since <u>Lucas</u>, the Supreme Court has indicated that the preclusion of evidence under state evidentiary rules will generally not violate the Constitution.  In <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998), the Court recognized that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials..." and that "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" <u>Scheffer</u>, 523 U.S. at 608 (internal citations omitted).  The exclusion of evidence is unconstitutionally arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused." <u>Id.</u>

9

> 2.   <u>Petitioner's Sixth Amendment Rights To Confrontation and Cross-Examination Were Not Violated</u>.

10
11

The Ninth Circuit has indicated that the appropriate Sixth Amendment analysis involves a two-part inquiry:

12
13
14
15

> "We inquire, first as to whether the excluded evidence is relevant.  If it is not relevant, [a petitioner] had no constitutional right to present it.  If the evidence is relevant, we ask next whether other legitimate interests outweighed [the petitioner's] interest in presenting the evidence.  Because trial judges have broad discretion both to determine relevance and to determine whether prejudicial effect or other concerns outweigh the probative value of the evidence, we will find a Sixth Amendment violation only if we conclude that the trial court abused its discretion."

16

<u>Wood</u>, 957 F.2d at 1550, quoting <u>United States v. Feldman</u>, 788 F.2d 544, 554 (9th Cir. 1986).

17
18
19
20
21
22

In applying this test, the Court is guided by the Ninth Circuit's decision in <u>Wood</u>. There, the defendant sought to introduce evidence that the rape victim had previously posed naked for men's magazines, had made pornographic films, and had engaged in sex for money.  Defendant argued that such evidence was directly relevant to show that the victim had a consensual sexual relationship with defendant "because it shows that she is a woman of questionable sexual morals."  <u>Wood</u>, 957 F.2d at 1550.  The Ninth Circuit, however, rejected such an approach as "outdated":

23
24
25
26

> "Other courts that have considered this theory of admissibility have consistently rejected it as reflecting outdated views of women and sexuality, and we similarly reject it...The fact that M.G. was willing to pose for *Penthouse* or act in sexual movies and performances says virtually nothing about whether she would have sex with Wood.  It only tends to show that she was willing to have sex, not that she was willing to have sex with this particular man at this particular time."

27

<u>Id.</u>  Accordingly, the court held that the proffered evidence lacked probative value.  <u>Id.</u>

28

///

1

2          The Ninth Circuit similarly rejected Wood's argument that the evidence tended to impeach

3   the victim's credibility: "Yet, the fact that she posed in the nude or acted in pornographic

4   performances does not in any way indicate that she is a dishonest person or had a motive to lie in this

    case." Id.

5          Moreover, the Ninth Circuit emphasized the public policy behind exclusion of prior sexual

6   history was not limited to encouraging rape victims to report crimes, but went to the very core of the

7   criminal justice process:

8          *Of significantly more import are the concerns, intrinsic to the truth-finding process
           itself, that introducing the evidence would confuse the issues and unduly prejudice the
9          jury.* Introducing evidence of M.G.'s discussions with Wood [which included showing
           him pornographic and naked photos of the victim] would necessarily also introduce
10         evidence of several previous incidents of sex with others, as well as evidence of
           exhibitionism.  Because M.G.'s acting and modeling experience are not themselves
11         relevant, the jury could be led to base its decision on irrelevant facts.

12         Moreover, if the jury considers these facts, it could feel hostility for her as an immoral
           woman, and it could base its decision on that hostility rather than on the actual facts of
13         the case.   The proffered evidence in this case is particularly prejudicial because it
           indicates not only that M.G. had extramarital sex, but also that she posed nude and had
14         sex both for money and for the purpose of making pornography. *Because many people
           consider prostitution and pornography to be particularly offensive, there is a
15         significant possibility that jurors would be influenced by their impression of M.G. as
           an immoral woman.  They could also conclude, contrary to the rape law, that a woman
16         with her sexual past cannot be raped, or that she somehow deserved to be raped after
           engaging in these sexual activities.  In light of these considerations, we conclude that
17         the risk of confusion and prejudice is substantial.*"

18   Id. at 1552-1553(emphasis supplied).); United States v. Kasto, 584 F.2d 268, 271 (6th Cir. 1978)

19   ("We, therefore, conclude that absent circumstances which enhance its probative value, evidence of a

20   rape victim's unchastity, whether in the form of testimony concerning her general reputation or direct

21   or cross-examination testimony concerning specific acts with persons other than the defendant, is

22   ordinarily insufficiently probative either of her general credibility as a witness or her consent to

23   intercourse with the defendant on the particular occasion charged to outweigh its highly prejudicial

24   effect.").

25         Hence, contrary to Petitioner's assertions, the relevance of the proffered evidence on the

26   central issue of consent was de minimis for the reasons expressed by the Ninth Circuit in Wood, i.e.,

27   evidence of the victim's sexual conduct on other occasions with individuals other than Petitioner is

28   irrelevant on the issue of the victim's consent to have sex with Petitioner on the date of the charged

offense.[13]   The issue of whether the victim had engaged in prostitution one year before the rape rather than seven years before the rape does not make it substantially more likely that the victim consented. Nor, in the Court's view, does either the fact of her prior prostitution history, or the fact that such history may have been relatively recent, have a substantial impact on the victim's credibility with jurors.

Second, even if the evidence were relevant, Petitioner's interest in presenting the evidence was outweighed by the public policy excluding such evidence under §§ 1103 and 782.  Finally, its admissibility is also outweighed by the interest in permitting trial courts the discretion to determine when and if the probative value of the proffered evidence is substantially outweighed by its prejudicial effect.  In this instance, the prejudicial effect is, as the <u>Wood</u> court described, sufficiently high to jeopardize the truth-finding process itself by confusing and possibly inflaming the jury with titillating and prejudicial facts of the victim's sexual past that are irrelevant to the issue of her consent on the date of the crime charged.[14]

Thus, the exclusion of Washington's testimony did not violate Petitioner's Sixth Amendment rights.  <u>Wood</u>, 957 F.2d at 1550.

### 3.  <u>Petitioner's Due Process Rights Were Not Violated</u>.

As mentioned previously, under the AEDPA, habeas relief will not be granted unless the adjudication of a state prisoner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  The strongest source of clearly established law implicating Petitioner's claim is <u>Crane v. Kentucky</u>, 476 U.S. 683, 106 S.Ct. 2142 (1986).  Although addressing

---

[13]Although in his arguments during the in camera hearing, defense counsel also argued that the fact that Dorothy had lied at her preliminary hearing was relevant on the issue of her credibility, this was not an issue raised by Petitioner's motion in limine, which was limited to admitting Washington's testimony about Dorothy's prior incidents of prostitution. (CT 315).  Accordingly, the state trial and appellate courts limited their rulings to the exclusion of Washington's testimony, and did not address the issue of the victim's false testimony.  Because of this, the Court here only addresses the alleged Fifth and Sixth Amendment violations resulting from the state court's decision to exclude Washington's testimony.

[14]Indeed, the inflammatory impact of the victim's sexual history was sufficiently great in this case that the victim herself denied it under oath at the preliminary hearing because she was so ashamed to have those in the courtroom hear about it. (CT 328.)  This sense of public approbation and shaming of the victim during the trial process is precisely what rape shield laws seek to avoid by excluding this sensitive evidence so that victims will not be put on trial and will be encouraged to report rapes to law enforcement.  This is a public policy of sufficient gravitas to clearly outweigh any marginal probative value to Petitioner that the introduction of the victim's sexual history might have had.

the exclusion of the circumstances of a defendant's confession, the Supreme Court in <u>Crane</u> nevertheless reaffirmed the general principle that criminal defendants have a "fundamental constitutional right to a fair opportunity to present a defense." <u>Id.</u> at 687 (citing <u>California v. Trombetta</u>, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984));  <u>LaJoie v. Thompson</u>, 217 F.3d 663, 668 (9th Cir. 2000)(The Sixth Amendment's Compulsory Process Clause and the Due Process Clause of the Fifth Amendment have been read to guarantee "criminal defendants a meaningful opportunity to present a complete defense.").  As Justice O'Connor observed:

> "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, ...or in the Compulsory Process or Confrontation clauses of the sixth Amendment, ...the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."

<u>Id.</u> at 690 (citing <u>Trombetta</u>, 467 U.S. at 485). (Citations omitted).

"A state court's evidentiary ruling is grounds for federal habeas corpus relief only if it renders the state proceeding so fundamentally unfair as to violate due process." <u>Bueno v. Hallahan</u>, 988 F.2d 86, 87 (9th Cir. 1993)(per curiam); <u>see also Estelle</u>, 502 U.S. at 67 (reemphasizing that federal habeas court may not reexamine state court determinations on state law questions.).  The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly.  <u>See</u>, <u>McGuire</u>, 502 U.S. at 72.  "To evaluate whether exclusion of evidence reaches constitutional proportions, we should consider five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense." <u>Tinsley v. Borg</u>, 895 F.2d 520, 530 (9th Cir. 1990), <i>cert. denied</i>, 498 U.S. 1091(1991).  The Court must then balance the importance of the evidence against the state interest in exclusion.  <u>Id.</u>; <u>Miller v. Stagner</u>, 757 F.2d 988, 994 (9th Cir. 1985)  In so doing, a court must consider the purpose of the rule; its importance; how well the rule implements its purpose; and how well the purpose applies to the case at hand.  <u>Stagner</u>, 757 F.2d at 994-995.  The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, and in excluding unreliable or prejudicial evidence. <u>Id.</u>

From the preceding discussion, it should be clear that, in the Court's view, the probative value of the excluded testimony was de minimis and that the public policies behind California's rape

shield law as well as the policy of giving trial judges wide discretion to determine evidentiary issues far outweigh whatever meager relevance Washington's testimony might have had on the critical issues in this case.   The fact that the proffered testimony was generally reliable–Dorothy admitted as much after the preliminary hearing–and that it was not cumulative, does not outweigh its highly prejudicial effect, as noted by the Ninth Circuit in <u>Wood</u>.  Thus, balancing the <u>Tinsley</u> factors, the Court concludes that Petitioner's due process rights were not violated by the state courts' exclusion of the victim's sexual history.  <u>Tinsley</u>, 895 F.2d at 530; <u>Stagner</u>, 757 F.2d at 994-995.

>            4.  <u>Any Error Is Harmless</u>.

The Court additionally concludes that even if the state court erred in excluding the evidence, and even assuming, arguendo, that such an error rose to the level of a constitutional violation, the error was harmless constitutional error under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)("A federal court may grant habeas relief based on trial error only when that error had substantial and injurious effect or influence in determining the jury's verdict."); <u>Calderon v. Coleman</u>, 525 U.S. 141 (1998).   The United States Supreme Court has held that the appropriate standard on collateral review for trial errors such as that asserted in Ground Two is whether the error resulted in "actual prejudice." <u>Brecht</u>, 507 U.S. at 622- 623, 638.

Petitioner has failed to show actual prejudice resulting from the trial court's exclusion of the Dorothy's sexual history.   The evidence had only marginal relevance to any issue in controversy, and forensic evidence and witness testimony corroborated Dorothy's version of events and controverted Petitioner's defense of consent.   It is understandable that Petitioner might feel the exclusion of this evidence was of critical import to his case since he did not present any other evidence to support  his defense of consent.   However, Petitioner's own lack of evidence does not imbue the excluded evidence with any greater significance than it already had.   Nor does it diminish the persuasive impact of the substantial evidence presented by the State. Under such circumstances, the Court concludes that the trial court's error, if any, in excluding Washington's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict, nor did it result in actual prejudice.  <u>Brecht</u>, 507 U.S. at 622- 623, 638.  Hence, it is harmless.

///

1    Accordingly, the Court concludes that the state courts' decision regarding Ground Two was

2    not contrary to, or an unreasonable application of, clearly established federal law. Hence, Ground

3    Two must be denied.

4    **Ground 3.      The trial court violated Petitioner's constitutional rights by instructing**
     **the jury with the 1999 revision of CALJIC No. 2.50.01.**

5

6    A.      General Principles of Instructional Error.

7    In determining whether instructional error warrants habeas relief, a habeas court must

8    consider "'whether the ailing instruction by itself so infected the entire trial that the resulting

9    conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or

10   even universally condemned.'"  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977)

11   (quoting Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); California v. Roy, 519 U.S.

12   2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed

13   under the standard in Brecht v. Abrahamson, 507 U.S. at 637--whether the error had a substantial

14   and injurious effect or influence in determining the jury's verdict.).

15   In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility

16   at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

17   County Court of Ulster County, N. Y. v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224 (1979); In re

18   Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970).  A permissive inference is one of the most

19   common evidentiary devices, which allows, but does not require, the trier of fact to infer the

20   elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind

21   on the defendant.  Ulster, 442 U.S. at 157, 99 S.Ct. at 2224.  "Because this permissive presumption

22   leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it

23   affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the

24   case, there is no rational way the trier could make the connection permitted by the inference."  Id.,

25   442 U.S. at 157, 99 S.Ct. at 2225; U.S. v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).  "A permissive

26   inference violates the Due Process Clause only if the suggested conclusion is not one that reason and

27   common sense justify in light of the proven facts before the jury."  Francis v. Franklin, 471 U.S. 307,

28   314-315 (1985).

1

      B.      CALJIC No. 2.50.01, As Given Here, Is Not Unconstitutional.

2

      Petitioner argues that CALJIC No. 2.50.01, the jury instruction relating to the prior conduct

3

admitted pursuant to § 1108, allowed the jury to convict him of the current crimes by finding that the

4

prior conduct occurred by a preponderance of the evidence.  The instruction, therefore, had the

5

effect, according to Petitioner, of allowing the jury to circumvent the requirement of finding each

6

element of the crime beyond a reasonable doubt, effectively lowering the prosecution's burden of

7

proof.

8

      The Due Process Clause allows conviction only if the prosecution proves beyond a

9

reasonable doubt every element of the charged crime.  This standard reduces the chance that an

10

innocent person will be conviction.  In re Winship, 397 U.S. at 362.  Winship, however, does not

11

require that every single fact upon which the jury relies be proven to a reasonable doubt.  Many facts

12

not proven to that standard may, collectively, allow the jury to infer that an element of the crime is

13

proven beyond a reasonable doubt.  To enforce Winship's rule, judges must instruct juries that they

14

cannot return a guilty verdict unless the government has met this burden.  Cool v. United States, 409

15

U.S. 275, 278 (1972).  A jury conviction based upon an impermissibly low quantum of proof violates

16

the jury trial guarantee of the Sixth Amendment.  Sullivan v. Louisiana, 508 U.S. 275, 278 (1993).

17

A judge can violate a defendant's rights by giving an instruction that undercuts the force of an

18

otherwise proper beyond-a-reasonable-doubt instruction.  See, e.g., Cool, 409 U.S. at 102-103;

19

Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

20

      When a jury instruction is susceptible to a reading that would render the verdict

21

unconstitutional and another that would generate a proper verdict, the reviewing court considers the

22

challenged instruction in light of the full jury charge and in the context of the entire trial.  See,

23

Naughten, 414 U.S. at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675

24

(1975)(consider context of whole trial).  The court must then decide whether there is a reasonable

25

likelihood that the jury applied the challenged instruction in an unconstitutional manner.  Estelle, 502

26

U.S. at 72.  A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-

27

a-reasonable-doubt instruction.  Naughten, 414 U.S. at 149-150.

28

///

The jury was instructed with revised version of CALJIC Nos. 2.50.01 and 2.50.1 as follows:

Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in this case.

"Sexual offense" means a crime under the laws of the state or of the United States that involves any of the following:

A.  Any conduct made criminal by Penal Code § 261(a)(2).  The elements of this crime is [sic] set forth elsewhere in these instructions.

B.  Contact, without consent, between any part of the defendant's body or an object and the genitals of another person.

C.  Contact, without consent, between the genitals of the defendant and any part of another person's body.

If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses.  If you find the defendant had this disposition, you may, but are not required to, infer that he was likely to and did commit the crimes of which he is charged or accused.

*However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.  The weight and significance of the evidence, if any, are for you to decide.*

Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed a crime or sexual offense other than those for which he is on trial.

You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other crime or sexual offense.

Preponderance of the evidence means evidence that has more convincing force than that opposed to it.  If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

You should consider all the evidence bearing upon every issue regardless of who produced it.

(RT 429-431.)(Emphasis supplied.)[15]

Prior to 1999, the standard CALJIC version of No. 2.50.01 did not contain the language italicized above.  In Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), the Ninth Circuit affirmed a district court order granting a petition for a writ of habeas corpus to a prisoner held pursuant to a state-court judgment, and, in so doing, found the pre-1999 version of CALJIC 2.50.01 to be unconstitutional.  In Gibson, the petitioner had been tried for battery and sexual crimes against his wife.  The prosecutor introduced evidence that Gibson had committed prior, uncharged sexual offenses against her.  The jury had been instructed that it could use the defendant's alleged propensity for sexual violence as proof of the charged crimes if the prior offense was proven by a

---

[15]CALJIC No. 2.50.01 is based on California Evidence Code § 1108.

preponderance of the evidence.  The Ninth Circuit held that the "interplay" of two instructions–one stating that the priors need only be proven by a preponderance of the evidence, and the other stating that the priors could be used to prove guilt–created a Sixth Amendment violation by allowing the jury to "infer that he had committed the charged acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence."  <u>Gibson</u>, 387 F.3d at 814, 817-818, 822.

In response to criticisms like those voiced in <u>Gibson</u>, California revised its standard jury instructions in 1999 to include the language italicized above.  <u>People v. Reliford</u>, 29 Cal.4th 1007, 1012 (2003).  These revised instructions were given in Petitioner's trial.

The Court finds that CALJIC No. 2.50.01 did not undermine the jury's responsibility to find each element beyond a reasonable doubt.  <u>Ulster</u>, 442 U.S. at 156, 99 S.Ct. at 2224.  As indicated above, the revised language contained the proviso that, "[I]f you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes."   This additional language makes it clear that, even though the preponderance of the evidence standard applied to proving the prior incident, the charged crimes nevertheless must be proved beyond a reasonable doubt.  Thus, the revised instructions, contrary to Petitioner's contentions, made it sufficiently clear that guilt could *not* be based upon anything less than proof beyond a reasonable doubt.

Moreover, considering all of the jury instructions as a whole, the Court finds that the instructions would not have confused reasonable jurors about the relevant burden of proof.  First, the jury was given the definition of reasonable doubt, and instructed that the People had the burden of proving Petitioner guilty beyond a reasonable doubt.  (CT 437.)  Second, the definitions of the crimes with which Petitioner was charged were read to the jury, along with the specific elements that the jury needed to find in order to convict Petitioner.  (CT 438-448.)   Third, the jury was instructed to "[c]onsider the instructions as a whole and each in light of all the others."  (CT 407.)  Regarding circumstantial evidence, the court instructed that "each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt."  (CT 415.)  Additionally, the court instructed jurors that any perceived lack of evidence on the part of the defense could not compensate for the prosecution's failure to prove its case beyond a

reasonable doubt. (CT 434.) Finally, at no time during the closing arguments did counsel for either side refer to the preponderance of the evidence standard.

The jury is presumed to have followed the instructions, Weeks v. Angelone, 528 U.S. 225, 234 (2000), and following these instructions, it could not have taken the constitutionally-impermissible route to a guilty verdict by employing a lower quantum of evidence to convict Petitioner. Accordingly, neither the instructions, when taken as a whole, nor any other aspect of the trial, suggested to the jurors that they could convict Petitioner solely by finding the prior acts by a preponderance of the evidence.

Petitioner's argument that the instructions were constitutionally invalid turns upon an atomized, compartmentalized parsing of the instructions. Read in isolation, individual words and phrases within the instructions may, at first blush, appear misleading or ambiguous. Indeed, even as revised, the instructions are not, in isolation, a model of clarity. The Supreme Court, however, mandates that the instructions be read *as a whole* and in the context of the *entire trial*. Naughten, 414 U.S. at 146-147; Park, 421 U.S. at 675. Considered holistically, the instructions at Petitioner's trial did not relieve the jury of its duty to acquit him if his guilt were not proven beyond a reasonable doubt. It was not reasonably likely that any juror understood the instructions, as revised and given in this case, to authorize conviction on a lower quantum of proof. McGuire, 502 U.S. at 72. Using the revised language, the trial court gave the reasonable doubt instruction in the same breath as it described proper use of the preponderance-of-the-evidence standard. It thus harmonized the two standards and made clear that the higher one applied to the guilt determination.

In rejecting Petitioner's claim on direct appeal, the Fifth District Court of Appeal relied upon People v. Falsetta. (Doc. 11, Exh. I, p. 13). In Falsetta, the California Supreme Court held that the 1999 revised version of CALJIC 2.50.01 "adequately sets forth the controlling principles under § 1108." Falsetta, 21 Cal.4th at 924. Subsequent to the 5th DCA's opinion, the California Supreme Court, in Reliford, held No. 2.50.01 constitutional:

> We do not find it "reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense...."

Reliford, 29 Cal.4th at 1016.

Here, the 5th DCA, relying on Falsetta, concluded that the inferences allowed by CALJIC Nos. 2.50.01 and 2.50.1 were reasonable. (Doc. 11, Exh. I, p. 13). In language foreshadowing Reliford, the 5th DCA held that, "This revision appears to eliminate any possibility, however improbable, that a jury might rely on a lesser burden of proof to convict appellant of the charged offenses...." Id. Thus, in light of all the instructions and the trial as a whole, the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Moreover, even if the instructions did rise to the level of constitutional error, such error was harmless under Brecht. The forensic evidence and witness testimony supporting Dorothy's testimony were compelling on the question of Petitioner's guilt. Contrary to Petitioner's contentions, the prosecution's case did not turn entirely on the victim's credibility, but rather rested upon a set of circumstances, comprised both of forensic evidence, victim testimony, and corroborating witness testimony, that together was highly probative of guilt. Nor was the evidence of guilt premised primarily on the propensity evidence to which the challenged instruction referred. Indeed, the prosecution made only fleeting references to the prior rape of Aida Wooten during her closing argument. In sum, based on the state of the non-propensity evidence, had reasonable jurors believed Petitioner to be not guilty, i.e., having rejected the State's forensic evidence, its victim's testimony, and that of corroborating witnesses, it is highly improbable that evidence of the ten-year-old rape of Aida Wooten would have caused these same jurors to change their minds and find Petitioner guilty. Hence, the failure to instruct on CALJIC No. 2.50.01 did not "actually prejudice" Petitioner, and thus is harmless. Brecht, 507 U.S. at 622- 623, 638.

In sum, the trial court's instructions and the court of appeal's decision to uphold them did not violate any federal constitutional rule that was clearly established by the Supreme Court. Petitioner's rights were honored, despite any potential ambiguity in the instructions. He was not entitled to a perfect trial, only a fair trial. That is what he got.

Accordingly, Ground Three without merit and must therefore fail.

1

**ORDER**

2
        Accordingly, the Court HEREBY ORDERS that Petitioner's Petition for Writ of Habeas

3
Corpus (Doc. 1), is DENIED with prejudice.  All pending motions and requests are DENIED as

4
MOOT.

5
        The Clerk of the Court is DIRECTED to enter judgment for Respondent and close the file.

6

7
IT IS SO ORDERED.

8
Dated:   **March 22, 2006**                                    _____/s/ Theresa A. Goldner_____
**j6eb3d**                                                UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28